## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| *IN RE TECFIDERA ANTITRUST LITIGATION* | ) | **No. 24 CV 7387** |
| | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| | ) | **September 25, 2025** |

### MEMORANDUM OPINION and ORDER

In this consolidated civil class action, Plaintiffs assert antitrust and RICO claims related to Defendant Biogen's alleged scheme to limit competition using unlawful kickbacks to pharmacy benefit managers in exchange for placement of its multiple sclerosis medication Tecfidera above generic equivalents on their formularies. Before the court are cross motions to enter a proposed Electronically Stored Information ("ESI") protocol. For the following reasons, Plaintiffs' motion is granted, and Defendant's motion is denied without prejudice:

### Background

The court stayed discovery pending a ruling on likely Defendant's motion to dismiss the operative complaint,[1] finding that discovery "will be significant and substantial." and there is "no good cause to begin" before the scope thereof can be determined. (R. 46, Nov. 25, 2024 Order.) However, the court permitted the parties to exchange Rule 26(a)(1) disclosures and to discuss a protocol for handling ESI and

---

[1] The court granted Defendant's motion to dismiss in June 2025, but permitted Plaintiffs to file their Second Amended Complaint, which they did in August 2025. (R. 99.) The court anticipates Defendant will move to dismiss the complaint and is ordered to do so by October 10, 2025. To move this case forward as expeditiously as possible, this court rules on the pending cross motions should claims remain.

to file their joint or separate motions for entry of confidentiality and ESI orders as needed, (R. 46, Minute Order) which they did in April 2025, (R. 73, Pls' Mot. Entry ESI Protocol; R. 76-1, Def. Biogen's Mot. Entry ESI Protocol). The parties' cross motions for entry of their version of the ESI protocol noted that the parties agreed on all issues except for one relating to email threading, which Defendant seeks to include but Plaintiffs oppose. (See generally R. 73, Pls.' Mot., Ex. A, Pls.' Proposed ESI Protocol; R. 76-3, Def.'s Proposed ESI Protocol.) In May 2025 the court held a motion hearing regarding this dispute. (See generally R. 102, May 2, 2025 Hr'g Tr.)

## Analysis

Discovery allows litigants to "investigate facts and clarify issues." *Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*, No. 21 CV 6890, 2024 WL 5481238, at *1 (N.D. Ill. Dec. 30, 2024). "[A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" can be requested, Fed. R. Civ. P. 26(b)(1), and "relevance is to be construed broadly," *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 CV 305, 2024 WL 4188728, at *3 (N.D. Ill. Sept. 13, 2024) (citations omitted). While "[r]elevance . . . is the initial touchstone," in 2015 Rule 26 was amended to highlight the second touchstone, proportionality. *Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 732 (N.D. Ill. 2023). Assessing proportionality requires the consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

2

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Discovery requests may include ESI "stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). When producing ESI, parties must comply with additional requirements:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> > (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> > (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). The most recent substantive amendments to Rule 34(b) were intended to protect the requesting party against "unnecessary obstacles," Fed. R. Civ. P. 34(b) Advisory Committee's Note to 2006 amendment, and to reduce "unreasonable burdens by objections to requests to produce," Fed. R. Civ. P. 34 Advisory Committee's Note to 2015 amendment. In pursuit of the former goal, Rule 34(b) permits ESI to be requested in a designated form of production and limits the "option to produce in a reasonably usable form" to one that does not "make[] it more difficult or burdensome for the requesting party to use . . . ." Fed. R. Civ. P. 34(b) Advisory Committee's Note to 2006 amendment. In addressing the latter goal, the

Rule requires objections to production to "state with specificity the grounds for objecting to the request, including the reasons," Fed. R. Civ. P. 34(b)(2)(B), including when demonstrating the requested ESI "is not reasonably accessible because of undue burden or cost," Fed. R. Civ. P. 26(b)(2)(B).

Once relevance of ESI is established, the objecting party bears the burden of demonstrating that the request is improper. *See In re Surescripts Antitrust Litig.*, No. 19 CV 6627, 2024 WL 1195571, at *3 (N.D. Ill. March 20, 2024). The objecting party must state more than "'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome,' or that it is 'not reasonably calculated to lead to the discovery of admissible evidence'" to satisfy this burden. *Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, No. 17 CV 3166, 2018 WL 704686, at *5 (N.D. Ill. Feb. 5, 2018) (citation omitted).

## A.     Threading

Defendant requests this court enter an ESI protocol allowing for threading emails to reduce the volume of emails it needs to review for responsiveness. "Email threading is the technical process of recombining emails that comprise an email discussion, including replies and forwards." The Sedona Conference, *Commentary on Privilege Logs,* 25 Sedona Conf. J. 221, 266 (2024). Threading, or grouping all emails together, may aid reviewers in identifying gaps in production or inconsistencies more efficiently. *See, e.g.,* Pamela Garman & Casey Terrell, *Technology and Ethics: Tips for the Tech-Averse in Effectively Managing ESI in Federal Court*, 24 TYL 10, 11 (Spring 2020). The process identifies inclusive emails, meaning those "containing

content that is not present in its entirety in any other email in the set of emails being analyzed." The Sedona Conference, *Commentary on Privilege Logs, supra* at 266 n.72. Inclusive emails are typically "the last-in-time email in any branch of the thread, as well as any email with an attachment that is not also attached to a later-in-time email that contains the full content of the earlier email." The Sedona Conference, *The Sedona Conference Glossary: eDiscovery and Digital Information Management*, 5th Ed., 21 Sedona Conf. J. 263, 381 (2020).

The remaining emails are categorized as non-inclusive because their content is included elsewhere in an inclusive thread. *Id.* at 343. Non-inclusive emails are often suppressed to increase the speed and efficiency of review and production of large numbers of emails. *See* Steven M. Medlock et al., *Email Threading: Streamlining Discovery Review*, 41 Comput. & Internet Lawyer 1, 1 (July-Aug. 2024). When non-inclusive emails are suppressed, the content is available in the inclusive email, but the metadata attached to each suppressed email is not included in production. *See* Joe Leonard, *Threading the Labyrinth of Modern Email Collections*, 46 DSBA Bar J. 12, 13 (March 2023).

The Sedona Conference notes that the discovery duties of production for metadata "are generally the same" as for other ESI, meaning that "[m]etadata . . . must be produced when requested and not objected to." The Sedona Conference, *Commentary on Ethics & Metadata,* 14 Sedona Conf. J. 169, 184 (2013) (citation omitted). Email metadata encompasses over 1,200 properties, including when the email was sent, or when a recipient received, viewed, replied, or forwarded the

message.  *The Sedona Principles, 3d Ed.,* 19 Sedona Conf. J. 1, 210 (2018).  Parties

are encouraged to agree early in the discovery process on whether email threading

should be allowed for review or production.  *Id.* at 71-72 (Principle 3).

## B.     Precedent

As a threshold matter, although both parties argue that case law supports

their positions, from this court's perspective there is no binding precedent in the

Seventh Circuit regarding this issue.  The parties do not dispute that producing

threaded emails may be permitted (or prohibited) in a joint, stipulated ESI protocol.

(See, e.g., R. 73, Pls.' Mot. at 3 n.3 (citing cases including *In re Uber Techs., Inc.*

*Passenger Sexual Assault Litig.*, No. 23 MD 3084, Dkt. Nos. 261-62, 524 (N.D. Cal.)

(prohibiting email threading by stipulation)); R. 86, Def.'s Resp. at 3 n.3 (citing *In re*

*FICO Antitrust Litig.*, No. 20 CV 2114 (N.D. Ill.), Dkt. No. 207 (permitting email

threading by stipulation)); id. at 3 (citing *In re Deere & Co. Repair Servs. Antitrust*

*Litig.*, No. 3:22 CV 50188 (N.D. Ill.), Dkt. No. 97 at 11 (same)).)  But parties can

"stipulate out of the default rules for production," so these arguments are inapposite.

*Anderson Living Tr. v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 515 (D.N.M. 2014).

Plaintiffs cite cases in which courts denied allowing producing threaded

emails, but they are not binding on this court.  (See R. 73, Pls.' Mot. at 3-4 (citing

cases including *In Re Actos Antitrust Litig.*, 340 F.R.D. 549, 552 (S.D.N.Y. 2022)

(prohibiting email threading where parties did not stipulate to allowing it and

plaintiffs demonstrated that loss of metadata impaired searchability)).)  That said,

this court recognizes that "courts tend to 'liberally construe[]' the discovery rules in

'antitrust cases,'" (see R. 85, Pls.' Resp. at 4 (citing *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 23 CV 155, 2025 WL 592484, at *2 (N.D. Tex. Feb. 24, 2025) (collecting cases)); *see also Linet Ams.*, 2024 WL 5481238, at *3 ("[C]ourts generally take an expansive view of discovery in antitrust cases. . . . 'Broad discovery is permitted because direct evidence of ... anticompetitive [conduct] is often difficult to obtain.'" (citations omitted)).

Nevertheless, broad discovery requires caution. The Supreme Court has recognized the potential for discovery abuse inherent given the "unusually high cost" and "extensive scope" of discovery in antitrust cases, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (citations omitted), and courts in this district recognize the importance of balancing the discovery needs of plaintiffs with the cost to defendants, *see, e.g., In re Surescripts*, 2024 WL 1195571, at *11 ("The high cost of antitrust discovery is well documented [and] the threat of discovery expense could push [parties on either side] to settle for reasons other than the merits of a case." (citations omitted)); *DSM Desotech Inc. v. 3d Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) ("[T]he court should be particularly mindful of the course of discovery it will authorize in antitrust cases."). As such, the court considers Plaintiffs' request "[i]n light of the expansive view of discovery in antitrust cases, and the broad relevance standard generally," *Linet Ams.*, 2024 WL 5481238, at *3, while also allowing only for discovery proportional to the needs of the case.

Defendant points to several non-binding cases, which do not show email threading being permitted over the requesting party's objection, (see, e.g., R. 86,

7

Def.'s Resp. at 3 (citing *ACLU Found. of S. Cal. v. U.S. Immigr. & Customs Enf't*, 705 F. Supp. 3d 1077, 1092 (C.D. Cal. 2023) (ordering the use of email threading to increase the rate of production in a FOIA action where the requesting party did not object to its use)), or simply discussing email threading in the context of a broader dispute, (see, e.g., id. at 2 (citing *Jacobsen Warehouse Co., Inc. v. Schnuck Mkts., Inc.*, No. 17 CV 764, 2020 WL 853736, at *5-6 (E.D. Mo. Feb. 20, 2020) (overruling objections to reimbursement of costs for "ESI-related charges" including "analytical tasks such as email threading"), *aff'd* 13 F.4th 659 (8th Cir. 2021); R. 76, Def.'s Mot. at 4 (citing *Malone v. United Parcel Serv., Inc.*, No. 21 CV 3643, 2022 WL 18775906, at *2 n.2 (E.D. Pa. Nov. 28, 2022) (defining email threading within the context of a search term dispute)).

Defendant also cites three decisions from this district that pertain to the requirements for privilege logs when multiple emails are included within the same email thread. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) (holding that a party may "legitimately withhold an entire e-mail *forwarding* prior [non-privileged] materials to counsel, while also disclosing those prior materials themselves.") (emphasis in original); *Williamson v. S.A. Gear Co., Inc.*, No. 15 CV 365, 2017 WL 10085017, at *1 (N.D. Ill. June 6, 2017) (citing *Muro* for the same conclusion); *U.S. Sec. Exch. Comm. v. Hollnagel*, No. 07 CV 4538, 2010 WL 11586980, at *6-7 (N.D. Ill. Jan. 22, 2010) (discussing required privilege log disclosure of privileged emails threads where individual emails within the thread are not privileged). However, none of these cases addresses the issue presented here, where

one party opposes withholding non-privileged non-inclusive emails to simplify ESI review and production. Because the parties agree that Defendant will log separately every email withheld as privileged, (R. 102, May 2, 2025 Hr.'g Tr. at 32), these cases are not helpful to resolving the disputed issue.

Defendant refers to a single decision from this district where the court entered an ESI protocol permitting email threading over the requesting party's objection. (See R. 86, Def.'s Resp. at 3 (citing *In re Multiplan Health Ins. Provider Litig.*, No. 24 CV 6795 (N.D. Ill.), Dkt. Nos. 238, 241 at 16-17).) Like here, the plaintiffs in *Multiplan* proposed an ESI protocol requiring production of all individual emails and associated metadata, while the defendant's proposal allowed threading. *See In re Multiplan*, Dkt. No. 211 at 3, 5. The plaintiffs argued that production of individual emails was required for the ESI to be "reasonably usable," because the associated metadata "can be leveraged in conjunction with search and analytics tools to evaluate . . . evidence." *Id.* at 4 (citing Fed. R. Civ. P. 34(b)(2)(E)(ii)). The defendants countered that "[e]mail threading is an industry-standard process . . . and is routinely included in ESI protocols" for cost-reduction. *Id.* at 5. The defendants further argued that the plaintiffs did not demonstrate "a particularized need" to justify the additional burden. *Id.* at 6. But while the *Multiplan* parties' opposing views on threading are akin to those in this case, the court's order there does not provide insight as to its reasoning. *See id.*, Dkt. No. 238 (adopting the defendant's proposed ESI protocol permitting email threading). This court considers the *Multiplan* court's decision to be informative but not persuasive.

In distinguishing Plaintiffs' citations, Defendant illustrates the broader concept that the highly variable nature of ESI protocols renders such decisions case-specific, and the variability in provisions discussing metadata, non-inclusive emails with attachments, and blind-copied recipients makes direct comparison difficult. (R. 86, Def.'s Resp. at 3 n.4.) As such, this court applies Rules 26 and 34 to the facts of the case using the broad discretion provided to district courts in discovery disputes. *See Jones v. City of Elkhart*, 737 F.3d 1107, 115 (7th Cir. 2013) ("[M]agistrate and district [judges] enjoy extremely broad discretion in controlling discovery.").

## C.    Usability

The primary benefit to email threading is that it reduces the volume of emails the producing party must review as the process involves the de-duplication of non-unique email correspondence. But Plaintiffs argue that "routine document review tasks are not possible" with email threading because of the loss of the non-inclusive emails' metadata. (R. 73, Pls.' Mot. at 3.) Without this metadata, Plaintiffs argue that "available organizational and data visualization tools" will not be functional, requiring them to resort to manual text searches that hinder the overall searchability of the emails produced. (Id. at 4.) Because threaded emails, but not individual emails maintained in the ordinary course of business, impedes usability of these tools Plaintiffs contend that Defendant's proposal fails to comply with Rule 34(b). (Id. at 2.) Although Defendant has offered to write a script that would generate a new field populated with metadata relating to the participants and dates of non-inclusive emails, Plaintiffs argue this new field would not include all metadata and would still

10

prevent their use of data visualization tools, thereby preventing the ease of searchability that would be available if the emails were presented in their native form. (Id. at 5-6.)

Defendant responds that its ESI protocol "ensures information from non-inclusive emails is preserved," including all requested metadata, because it will split conversations in their own separate threads and produce attachments and information from non-inclusive emails, including the body of inclusive emails and the supplemental metadata field. (R. 76-1, Def.'s Mot. at 7.) Defendant contends that "no content or metadata is altered through the process of threading," and therefore email threading is consistent with Rule 34(b). (Id. at 8 (citing R. 76-2 ¶ 9).)

Despite Defendant's assurances, the court sides with Plaintiffs. First, Plaintiffs have requested production of the emails "as they are ordinarily maintained," which is the clearest default form of production set forth in Rule 34. Fed. R. Civ. P. 34(b)(2)(E)(ii). But Defendant proposes producing ESI in a form that deviates from the Rule 34 norm, from Plaintiffs' request, and without demonstrating that its proposed alternative is "reasonably usable" as required. *See id.* This is insufficient to justify setting aside Plaintiffs' proposal, which indisputably complies with the Rule. Indeed, while Defendant argues that email threading does not alter content or metadata, the fact that Defendant must program an additional field to capture the metadata at issue supports Plaintiffs' argument that withholding non-inclusive emails results in a loss of metadata. (See R. 76-1, Def.'s Mot. at 8; see also R. 73, Pls.' Mot. at 6.) The fact that the metadata Plaintiffs seek can be provided in

11

an additional field does not make it equivalent in terms of searchability and usability. Furthermore, unlike the *Multiplan* plaintiffs, here Plaintiffs have articulated a specific need (albeit barely) for the lost metadata in its ordinary form. (Compare R. 73, Pls.' Mot. at 6 (Plaintiffs arguing that the data visualization and automated timeline tools cannot function without the metadata as presented in their requested form), with *In re Multiplan*, Dkt. No. 211 at 4 (stating generally that lost metadata "can be leveraged" with search tools and "[c]ourts have ordered" production of all emails because such tools "are critical to litigants' ability to review large amounts of ESI").) Defendant may be correct that "text-based searches are a routine part of document review," (R. 86, Def.'s Resp. at 4), but Rule 34(b) does not state that a party can refuse to produce ESI as ordinarily maintained merely because the producing party's alternative form is also used in discovery, *see* Fed. R. Civ. P. 34(b)(2)(E)(ii).

During the May 2025 motion hearing, Defendant argued that Plaintiffs have not provided details to substantiate their claim that email threading would obstruct searchability, but this assertion incorrectly places the burden on Plaintiffs. (R. 102, May 2, 2025 Hr'g Tr. at 21, 37-38.) Rule 34(b) does not require that a party seeking relevant discovery justify its request that ESI be produced in the form in which it is ordinarily maintained. *See* Fed. R. Civ. P. 34(b)(2)(E). Defendant does not challenge the relevance of the individual emails and associated metadata, (see generally R. 76-1, Def.'s Mot.; R. 86, Def.'s Resp.; R. 102, May 2, 2025 Hr'g Tr.), and thus the burden "to show why [Plaintiff's] request is improper," lies with Defendant as the "objecting party," *In Re Surescripts*, 2024 WL 1195571, at *3. Defendant must

12

object with specificity, providing both the grounds and the reasons for objecting to the request. Fed. R. Civ. P. 34(b)(2)(B). Defendant's grounds for objecting are "the burden inherent in reviewing and producing an unthreaded document population." (R. 76-1, Def.'s Mot. at 7; R. 76-2 ¶ 10.) As burden objections present a question of proportionality, the proportionality factors under Rule 26(b)(1) must be considered.[2]

## D.    Proportionality

Defendant argues that the use of email threading "strikes a demonstrably proportionate balance," between reducing Defendant's costs while providing "all substantive information" that Plaintiffs requested. (R. 76-1, Def.'s Mot. at 1; see also Fed. R. Civ. P. 26(b)(1).) For support, Defendant submitted a declaration from Sean Riley, a Deloitte Principal Defendant engaged for eDiscovery services, in which Riley attests that without email threading, Defendant "will incur increased costs" in hosting, review, and production. (R. 76-2, Riley Decl. ¶ 10.) Defendant says the extended duration and scope of antitrust litigation will further exacerbate these costs. (R. 76-1, Def.'s Mot. at 6.) Plaintiffs argued during the hearing that Defendant has

---

[2] Plaintiffs also argue that excluding non-inclusive emails disadvantages trial strategy because they will be forced to present entire email threads to witnesses during depositions and examination at trial. (R. 73, Pls.' Mot. at 7.) Because this court finds that Plaintiffs are entitled to all metadata available in the emails as requested and ordinarily maintained, this argument need not be addressed. That said, this court is skeptical of this argument. Defendant expressed willingness to agree to a protocol permitting the use of redacted emails for presentation to witnesses. (R. 86, Def.'s Resp. at 7 n.9; R. 102, May 2, 2025 Hr'g Tr. at 37.) Plaintiffs cite no authority supporting the proposition that the rules of discovery require consideration of a preferred method of presenting exhibits to witnesses when determining the form of production, and they do not argue that the loss of metadata in non-inclusive emails would impact this task. (See generally R. 73, Pls.' Mot.)

not substantiated its claims of substantial burden with any details regarding the amount of time required for review or any specifics regarding potential additional hosting costs. (R. 102, May 2, 2025 Hr'g Tr. at 35-36.)

The court agrees with Plaintiffs on this point. Defendant provides no analysis of the proportionality factors in Rule 26(b)(1) beyond unspecified claims of substantial burden that the potential scope of discovery will exacerbate. (See, e.g., R. 76-1, Def.'s Mot. at 2, 6.) Riley's testimony that threading "can materially reduce the number of documents for review . . . result[ing] in lower document hosting costs and quicker completion" lacks sufficient specificity to assess Defendant's alleged burden. (R. 76-2, Riley Decl. ¶ 8.) Likewise, that the lack of threading "*can* result in higher hosting costs" is devoid of both specificity and certainty. (Id. ¶ 10 (emphasis added).) Nonspecific or speculative claims are insufficient for the court to weigh Defendant's burden against the remaining proportionality factors in Rule 26(b)(1). *See Duracell*, 2018 WL 704686, at *5. Moreover, Defendant's discussion of the vast scope of litigation and discovery cuts against its argument by incorrectly suggesting "the importance of the issues at stake" reduces its burden. Fed. R. Civ. P. 26(b)(1).

It is possible that if given more evidence of a specific substantial burden Defendant would incur—such as reasonable estimates of increased review time or financial projections reflecting significant increased hosting costs—the court may find Defendant's burden outweighs the benefit Plaintiffs expect from availability of the additional metadata. *See The Sedona Principles, 3d Ed., supra* at 1, Cmt. 2.e., 69-70 ("The objecting party should state the grounds for asserting that the request

14

lacks proportionality based on the applicable proportionality considerations, and why the costs and burdens of the requested discovery outweigh the likely benefits of the discovery sought, with sufficient specificity to permit the requesting party to understand the basis of the objection."). And a more detailed argument regarding "the importance of the [metadata] in resolving the issues" given the existence of other tools to increase searchability might change the calculus of a proportionality analysis. Fed. R. Civ. P. 26(b)(1). But as it stands now, Defendant fails to meet its burden to show that its objection on grounds of proportionality.

### Conclusion

For the foregoing reasons, Plaintiffs' motion is granted, and Defendant's motion is denied without prejudice.

ENTER:

Young B. Kim
United States Magistrate

15